DECISION.
Plaintiffs-appellants, Jeffrey W. Humphries, Donna S. Humprhries, James Jacobs, Dannie L. Brewer, Verna L. Beck, and Luther E. Anspach, appeal the summary judgment granted by the Hamilton County Court of Common Pleas in favor of defendant-appellee, Illinois National Insurance Co. (INIC), in a declaratory-judgment action.
The issue in this case is whether certain statements made by Dr. Frederick B. Winston and Dr. O. Daniel Fox in applications for malpractice insurance rendered the policy void ab initio. In 1995, J.D. Preston, an employee of Neace- Lukens Insurance Agency, contacted James Wygant, the office manager for Northwest Orthopaedics, Inc. Preston and Wygant discussed the issuance of a medical malpractice policy for Winston, Fox, and Northwest (collectively, "Northwest"). Preston solicited quotes from various insurers, and Wygant decided to purchase a policy from INIC on behalf of Northwest. Wygant and Winston then answered a series of questions in applications for insurance. Though Preston physically completed the applications, Wygant and Winston reviewed and signed the documents, with Wygant signing applications on behalf of Fox and the corporation.
After several medical malpractice claims were brought against Northwest, INIC denied coverage, citing misstatements of fact contained in the applications. Northwest then filed a declaratory-judgment action in the trial court. The trial court granted summary judgment in favor of INIC on the basis that misstatements of fact in the applications had rendered the policy void ab initio. This appeal followed.
Before we discuss the merits of the appeal, we must address several procedural matters. Initially, we note that Northwest is not a party to this appeal. Rather, the appellants are the former patients who had brought malpractice claims against Northwest. Northwest, in turn, has assigned to the appellants its claims against INIC under the insurance policy.
Next, we address appellants' motion to strike or dismiss the assignment of error advanced by INIC. The trial court granted partial summary judgment in favor of Northwest, holding that Preston and Neace-Lukens Insurance Agency became the agent of INIC at the time that Preston submitted the applications for malpractice insurance. INIC challenges that holding in a cross-assignment of error in which it seeks reversal of the partial summary judgment. Although INIC did not file a notice of appeal from that judgment, it now claims that its cross-assignment is advanced, pursuant to R.C. 2505.22, to prevent the reversal of the trial court's ruling that the policy was void.
INIC's reliance upon R.C. 2505.22 is misplaced. In its assignment of error, INIC does not merely seek to prevent reversal of the trial court's decision with respect to the validity of the policy. Rather, it seeks reversal of the trial court's judgment on the agency issue. Without a separate notice of appeal from that part of the trial court's judgment that INIC challenges, this court is without jurisdiction to rule upon the cross-assignment of error.[1] The appellants' motion to strike INIC's cross-assignment of error is accordingly granted.
A final procedural matter is INIC's motion to strike the appellants' second assignment of error. In that assignment, the appellants argue that the trial court erred in denying their motion for summary judgment. INIC contends that the assignment of error should be stricken because the appellants' notice of appeal does not specify that they are challenging the denial of their own motion for summary judgment. Because we hold that summary judgment was properly granted in favor of INIC, we also hold that the trial court properly denied the appellants' motion for summary judgment. We therefore overrule the appellants' second assignment of error and find the motion to strike the assignment to be moot.
We now turn to the appellants' first assignment of error, in which they argue that the trial court erred by granting summary judgment in favor of INIC. The appellants argue that the trial court erred in holding that the statements made in the applications constituted warranties and in holding that the alleged misstatements of fact constituted a breach of the warranties.
Pursuant to Civ.R. 56(C), a motion for summary judgment is to be granted only when no genuine issue of material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and, with the evidence construed most strongly in favor of the nonmoving party, that conclusion is adverse to that party.[2]
This court reviews the granting of summary judgment de novo.[3]
The consequences of a misstatement of fact by an insured depend upon whether the statement is a representation or a warranty.[4] A representation is a statement made prior to the issuance of the policy that tends to cause the insurer to assume the risk.[5] A warranty, by contrast, is a statement, description or undertaking by the insured of a material fact appearing either on the face of the policy or in another instrument specifically incorporated in the policy.[6] If the statement is a warranty, a misstatement of fact renders the policy voidab initio.[7] If the statement is a representation, a misstatement merely renders the policy voidable under certain circumstances.[8]
Whether a statement by an insured is a representation or a warranty depends initially upon whether the insurer chooses to incorporate or to omit the statement from the policy.[9] For an insurance application to be incorporated into the policy, the incorporating language must be unambiguous and must appear on the face of the policy.[10] The fact that the application is incorporated into the policy, however, is alone insufficient to make the statements in the application a warranty. As the Supreme Court of Ohio explained in Boggs,
 However, the mere fact that a statement of an insured is incorporated in a policy does not necessarily make such statement a warranty. Courts do not favor warranties, or forfeitures from the breach thereof, and a statement as to conditions does not constitute a warranty unless the language of the policy, construed strictly against the insurer, requires such an interpretation. The fundamental principle is that inasmuch as policies of insurance are in the language selected by the insurer they are to be construed strictly against the insurer, and liberally in favor of the insured ***. In other words, an insurer is bound by the provisions which he chooses to incorporate in his policy. If it is his purpose to provide that a misstatement by the insured shall render the policy void ab initio, such facts must appear clearly and unambiguously from the terms of the policy.[11]
 In the case at bar, it is undisputed that Preston of Neace-Lukens contacted Wygant for the purpose of selling Northwest malpractice insurance. Preston presented the applications for insurance that he had completed to Wygant and Winston. Winston signed his own application, and Wygant signed for Fox and for Northwest. The applications were then presented to INIC, which, in turn, issued policies of malpractice insurance to Northwest.
The applications and the policy signed by Winston and Wygant unambiguously incorporated the applications into the policy. The applications each stated, "[I]t is agreed that this application shall be the basis of the contract should a policy be issued, and it will be attached to and become a part of the policy." The applications signed by Northwest also indicated that "[a]ll written statements and materials furnished to the company in conjunction with the application are hereby incorporated by reference into the application and made a part hereof." A third admonition contained in the policy indicated that the issuance of the policy was made "in reliance upon the statements made in the application and declarations attached hereto and made part hereof."
Moreover, the policy language unambiguously indicated the consequences of concealment or misrepresentation in the applications. Paragraph IX of the policy stated, "This policy is void in any case of fraud by you relating to it. It is also void if you intentionally conceal or misrepresent a material fact or circumstance" concerning the policy.
Considering this evidence in a light most favorable to the appellants, we hold that the statements made in the applications constituted warranties within the meaning of Boggs and its progeny. INIC's reliance on the statements made in the applications was explicitly, unambiguously, and repeatedly indicated in the applications themselves and in the policy language, and the applications were clearly incorporated by reference into the policy. Also, the consequences of misrepresentation were clearly stated in the policy language.
The appellants maintain, though, that even if the statements were warranties, the misstatements of fact made by Northwest could not have voided the policy, because the misstatements were not "intentional" pursuant to the language of the policy. We find no merit in this argument. Even if, as the appellants argue, the term "intentional" modified both "conceal" and "misrepresent" in paragraph IX of the policy, the evidence indicated that the misstatements made by Northwest were intentional, thus voiding the policy.
 Pertinent to our review are the following two questions that were contained in the applications:
 Do you have any knowledge of any claims, potential claims, or suits in which you may become involved, including without limitation knowledge of any alleged injury arising out of the rendering or failure to render professional services which may give rise to a claim?
 Has any similar insurance ever been declined, canceled, non-renewed, surcharged or conditioned?
 Both questions were answered negatively in all applications. The record discloses, though, that the answers were untrue. As to the second question, in 1989, Physicians Insuring Exchange, which had been insuring Northwest, notified it that it was declining further coverage.
 As to the first question, Dr. Winston testified during his deposition,
 [T]here was a suit filed by Mr. Vernon Williams against me and I believe that claim was ongoing at the time that this application was submitted, and I believe we did convey that information to Mr. Preston, and I believe he was the one that checked these boxes and didn't, you know, didn't check them correctly, and I missed it on reviewing the file. ***
 Q. Were you aware of any [other claims against you] that were potential at that time?
 A. Well, I think that claims had been filed, not against me, but against Richards, the orthopedic implant company by one of my patients, so that was
Q. And those were involving the pedicle screws?
 A. Yes, by one patient Mr. Anspach had been part of the class action, but he had filed against Richards, not against me personally, but there was a potential that he would. ***
 Q. Did you ever disclose to Mr. Preston, INIC or Neace-Lukens of the probability of your concern about the Rogo Rod or pedicle screw litigation?
Mr. McIntosh [Winston's counsel]: Objection.
No.
The appellants do not contend that Winston and the other representatives of Northwest were unaware of the policy cancellation and potential litigation at the time the applications were completed. Rather, they argue that the correct information was supplied to Preston, who incorrectly completed the applications. Therefore, they argue, there was no intentional misrepresentation of the facts. We are not persuaded by this argument. As the trial court aptly noted, the uncontradicted evidence indicated that Wygant and Dr. Winston had reviewed the completed applications and had not corrected the misrepresentations. In view of that circumstance, Northwest cannot disclaim responsibility for the misrepresentations by claiming that Preston had erred in transcribing the answers.[12] The evidence thus indicated that the misstatements of fact concerning potential litigation and prior cancellation of coverage were intentional within the meaning of the policy language. Thus, there was no genuine issue of material fact concerning the misrepresentations, and INIC was entitled to judgment as a matter of law. The appellants' first assignment of error is therefore overruled, and the judgment of the court of common pleas is affirmed.
Gorman, P.J., and Sundermann, J., concur.
[1] See Lowenstine v. Delta Air Lines, Inc. (1982), 7 Ohio App.3d 185
186-187, 455 N.E.2d 3, 5-6.
[2] State ex rel. Howard v. Ferreri (1994), 70 Ohio St.3d 587,589, 639 N.E.2d 1189, 1192.
[3] Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127,129, 572 N.E.2d 198, 199.
[4] Allstate Ins. Co. v. Boggs (1971), 27 Ohio St.2d 216, 218,271 N.E.2d 855, 858.
[5] Id. at 219, 271 N.E.2d at 858.
[6] Id.
[7] Id. at 218-219, 271 N.E.2d at 858.
[8] Id. at 219, 271 N.E.2d at 858.
[9] Id.
[10] Jaber v. Prudential Ins. Co. of Am. (1996), 113 Ohio App.3d 507,511, 681 N.E.2d 478, 481.
[11] Boggs, supra, at 219, 271 N.E.2d at 858.
[12] See, e.g., Beard v. N.N. Investors Ins. Co. (1985),21 Ohio App.3d 219, 220, 486 N.E.2d 1255, 1257.